**United States District Court**
**District of Massachusetts**

```
_____
                                    )
UNITED STATES OF AMERICA,           )
                                    )
            v.                      )
                                    )        Criminal No.
MOISES CINTRON,                     )        07-10435-NMG
                                    )
            Defendant.              )
_____         )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

The defendant is charged with one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). He has moved to suppress evidence discovered in connection with a vehicle stop and statements made after that stop.

### A.   Factual Background

The government alleges, and has submitted supporting affidavits, that the following events occurred on November 5, 2007. On that morning the Massachusetts State Police received several reports that a blue Nissan Maxima, with Massachusetts plate number 85AE76, was being operated erratically. Trooper Richard Gaudet ("Gaudet") subsequently observed the vehicle traveling north on Route 128 in Lynnfield, Massachusetts. Gaudet observed the vehicle being driven in an erratic manner, weaving in and out of marked lanes and at one point almost hitting the

-1-

center barrier of the highway.  Upon witnessing this he activated
his lights and the car came to a stop in the left travel lane of
Route 128.

Gaudet approached the vehicle and observed three occupants:
a female driver, a young girl in the front passenger seat and a
male passenger, later identified as the defendant Moises Cintron
("Cintron"), in the back seat.  Cintron was lying across the back
seat and appeared to be asleep or unconscious.

Gaudet asked the driver to get out of the vehicle and
another Trooper who had arrived on the scene knocked on the rear
passenger window in an effort to wake Cintron.  When Cintron did
not respond the Trooper opened the car door, shook him and, when
he awoke, ordered him out of the car.  As Cintron was getting out
Gaudet, who was on the driver's side, saw the black handle of
what appeared to be a handgun in Cintron's left jacket pocket.
Upon seeing this Gaudet ran around to the passenger side of the
car, grabbed Cintron's pocket and, upon feeling what he believed
to be a handgun, removed the weapon.  Cintron was placed under
arrest for possession of a handgun.

Following his arrest, but later on the same day, Cintron was
interviewed by Special Agent Michael Turner ("Turner") of the
Bureau of Alcohol, Tobacco, Firearms and Explosives.  Turner
began the interview by reading Cintron his Miranda warnings and
obtaining a signed waiver.  When asked his name by Turner,

Cintron responded "Elizear Caceres."  Turner knew that
fingerprints had identified the defendant as Cintron and upon
further questioning Cintron admitted his true identity.  He also
told Turner that he had purchased the firearm from a black male
in Brockton, Massachusetts, for $250.  Turner knew that Cintron
had previously told Massachusetts State Police that he purchased
the gun for $150.  Turner spoke with Cintron again on January 7,
2008, at which time Cintron again told him that he purchased the
firearm for $250 from a "drug guy" on the street.

**B.    Procedural History**

Cintron was indicted on December 19, 2007 and filed the
pending motion to suppress on July 18, 2008.  In that motion he
requests an evidentiary hearing.  A non-evidentiary status
conference was held on October 21, 2008.  At that conference the
Court determined that an evidentiary hearing would be necessary
but granted the government time to file supplemental affidavits
in an effort to eliminate the need for such a hearing.  The Court
also granted the defendant an opportunity to respond with
counter-affidavits within 10 days of the government's filing.

After being granted an extension, the government filed
affidavits of two law enforcement officers on November 26, 2008.
The defendant has filed no affidavits in response.

**II.  Defendant's Motion to Suppress**

In evaluating Cintron's motion to suppress, the Court

-3-

scrutinizes separately each step of the interaction between the police and the defendant.  With respect to each step the Court must determine whether it was justified by the information known to officers at that time.  United States v. McKoy, 428 F.3d 38, 39 (1st Cir. 2005).  In this case Cintron challenges the validity, scope and duration of the traffic stop.  He asserts that all evidence obtained subsequently, including the seized handgun and his statements to law enforcement, are fruit of the poisonous tree.  He also contends that his statements were involuntary and not made pursuant to a knowing and intentional waiver of his Miranda rights.

**A.    The Initial Stop**

**1.    Legal Standard**

The Fourth Amendment to the United States Constitution guarantees each citizen the right to be free from unreasonable searches and seizures.  Police officers may, however, approach citizens and investigate potential criminal activity even without probable cause to make an arrest for the purposes of crime prevention and detection.  Terry v. Ohio, 392 U.S. 1, 22 (1968).  An officer may conduct a brief investigatory stop if he has "reasonable, articulable suspicion that criminal activity is afoot."  United States v. Romain, 393 F.3d 63, 71 (1st Cir. 2004).  Reasonable suspicion must be based on specific and articulable facts taken together with the rational inferences to

-4-

be drawn from those facts.  United States v. Woodrum, 202 F.3d 1, 6 (1st Cir. 2000).  The government bears the burden of proving that a vehicle stop without a warrant was justified.  United States v. Monteiro, 447 F.3d 39, 43 (1st Cir. 2006).  A court must look at the totality of the circumstances in order to determine the reasonableness of the stop.  United States v. Cortez, 449 U.S. 411, 417 (1981).

A traffic stop is generally reasonable if "the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810 (1996).  Furthermore, the fact that a traffic violation operates merely as a pretext for stopping motorists about whom the police harbor unrelated suspicions is irrelevant to the Fourth Amendment analysis.  Id. at 813 ("subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis").

## 2.  Application

The government has established through affidavits that officer Gaudet observed the vehicle in which Cintron was a passenger being driven erratically, weaving in and out of lanes and almost hitting a barrier in the median.   The defendant responds that any traffic violations that were allegedly observed were a pretext for the vehicle stop in question.  Regardless of subjective intentions, however, Whren clearly establishes that a stop is reasonable if officers have probable cause to believe a

-5-

traffic violation occurred.  517 U.S. at 810.   Here, Trooper
Gaudet observed what he believed were several traffic violations
thus justifying his stop of the vehicle.

   **B.   Scope of the Stop**

      **1.   Legal Standard**

   Officers making a traffic stop do not violate the Fourth
Amendment by requiring the driver and passengers to exit the
vehicle.  <u>Pennsylvania</u> v. <u>Mimms</u>, 434 U.S. 106, 109-11 (1977)
(driver); <u>Maryland</u> v. <u>Wilson</u>, 519 U.S. 408, 415 (1997)
(passengers).  Furthermore, police actions that might otherwise
exceed the permissible scope of a vehicle stop do not violate the
Fourth Amendment if they fall within the so-called "community
caretaking" doctrine.  <u>See</u> <u>Lockhart-Bembery</u> v. <u>Sauro</u>, 498 F.3d
69, 75 (1st Cir. 2007).  That doctrine permits warrantless
searches and seizures when they relate to

> community caretaking functions, totally divorced from
> the detection, investigation, or acquisition of
> evidence relating to the violation of a criminal
> statute.

<u>Cady</u> v. <u>Dombrowski</u>, 413 U.S. 433, 441 (1973).  Responding to
vehicle-related problems often falls under the caretaking role of
law enforcement.  <u>United States</u> v. <u>Rodriquez-Morales</u>, 929 F.2d
780, 785 (1st Cir. 1991).

      **2.   Application**

   Cintron's motion to suppress does not specify how the
vehicle search in this case exceeded the permissible scope.

Nevertheless, a review of the actions taken by law enforcement demonstrates that the Fourth Amendment was not violated.

Removal of the vehicle's occupants was clearly permissible even absent a showing of probable cause. See Mimms, 434 U.S. at 109-11; Wilson, 519 U.S. at 415.  Opening the door and shaking Cintron to awaken him also did not violate the Fourth Amendment because of the community caretaker doctrine.  That act was not undertaken by the state police as part of their investigation but rather out of concern for Cintron's safety. See Dombrowski, 413 U.S. at 441.  Here, two reasons justified waking Cintron.  First, he was unresponsive and lying across the back seat of the car. It was certainly reasonable to believe he might need medical attention.  Second, the vehicle had come to a stop in the passing lane on a major highway.  The state police had a legitimate concern that the removal of all occupants was necessary to ensure their safety and Cintron could not be removed without being awakened.

To the extent that Cintron challenges these aspects of the search, his contentions are without merit.  The actions of the state police were justified and did not violate the Fourth Amendment.

### C.   Seizure of the Gun

With respect to the seizure of the gun from his person, Cintron argues that the doctrine of plain view is inapplicable

-7-

because officers had unlawfully seized the vehicle and its occupants prior to observing the weapon.  That assertion is based on the premise that the traffic stop and the subsequent "seizure" of occupants were a violation of the Fourth Amendment.  Having already determined that those actions were permissible, this Court finds Cintron's argument with respect to plain view to be without merit.  Trooper Gaudet states in his sworn affidavit that he observed the gun protruding from Cintron's pocket as Cintron got out of the vehicle and thus its seizure, pursuant to the doctrine of plain view, was amply justified.  See, e.g., United States v. Taylor, 511 F.3d 87, 92 (1st Cir. 2007) (noting that plain view applies where officers observed the butt of a firearm protruding from under a towel during a traffic stop).

### D.   Voluntariness of Cintron's Statements

Cintron also asserts that any statements he made following the vehicle stop are fruit of the poisonous tree and were involuntary and not made pursuant to a knowing and intentional waiver of his Miranda rights.  Having already determined that no Fourth Amendment violation occurred, Cintron's fruits argument can be readily disposed of.

With respect to the voluntariness of his statements and his waiver of Miranda rights, Cintron does not specify how either were constitutionally deficient nor does he identify specific statements that he seeks to suppress.  His motion simply requests

-8-

that all statements made 1) at the scene of his arrest, 2) en
route to police facilities or 3) at the police station, be
suppressed.  The government bears the burden of proving a waiver
of <u>Miranda</u> by a preponderance of the evidence.  <u>United States</u> v.
<u>Downs-Moses</u>, 329 F.3d 253, 267 (1st Cir. 2003).

The government has identified the following statements made
by Cintron to police following his arrest:

1)   statements to Trooper Stevie Browning ("Browning"),
     made on the day of the arrest, in which Cintron falsely
     identified himself and said that he purchased the gun
     for $150;

2)   statements to Gaudet, made on the day of the arrest at
     the Danvers Police Station, in which he said he
     purchased the gun for $400;

3)   statements to Turner, made on the day of the arrest, in
     which Cintron confirmed his true identity and explained
     how he obtained the gun for a price of $250; and

4)   statements to Turner on January 7, 2008, in which he
     said that he bought the gun from a "drug guy" on the
     street for $250.

The government asserts that all of those statements were preceded
by <u>Miranda</u> warnings.  Police reports submitted with the
government's opposition indicate that Cintron was Mirandized by
Browning at the time of his arrest, at the scene and before
making the first two statements.  The reports also indicate that
he was Mirandized for a second time by Turner before making the
third and fourth statements.

Despite the police reports, however, the only record
materials of evidentiary quality before this Court are the

-9-

affidavits of Gaudet and Turner.  Neither of those affidavits establishes that Cintron was Mirandized at the time of his arrest, or at any other time before being Mirandized by Turner. Accordingly, there is no evidence in the record regarding whether the first two statements (made to Browning and Gaudet) were made after a valid waiver of <u>Miranda</u> rights.  An evidentiary hearing is therefore necessary to determine whether those statements should be suppressed.

With respect to the third and fourth statements (made to Special Agent Turner), the government has met its burden by proffering an affidavit from Turner with a <u>Miranda</u> waiver signed by Cintron.[1]  The defendant does not deny that he was given <u>Miranda</u> warnings by Turner nor does he offer any reason why his subsequent statements were involuntary.  Accordingly, any statements made by Cintron after signing the waiver will not be suppressed.

### E.    Need for an Evidentiary Hearing

Although Cintron has requested an evidentiary hearing, such hearings are required only when a defendant alleges facts that are "sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented." <u>United States</u> v. <u>Lewis</u>, 40 F.3d

---

[1] Although the signature on the waiver appears to read "Elizear Caceres," Turner's affidavit establishes that Cintron attempted to use that alias and is unrefuted.

1325, 1332 (1st Cir. 1994) (citation and internal quotation marks
omitted).  A defendant must make a "sufficient threshold showing"
that "there are factual disputes which, if resolved in his favor,
would entitle him to the requested relief."  United States v.
Staula, 80 F.3d 596, 603 (1st Cir. 1995); Lewis, 40 F.3d at 1332
("The defendant must allege facts that, if proven, would entitle
him to relief.").

Based on the defendant's allegations and the evidence
proffered, this Court concludes that a limited evidentiary
hearing is required to address only whether Cintron's statements
to Gaudet and Browning (i.e., his first two statements) were
preceded by Miranda warnings.  Accordingly, an evidentiary
hearing will proceed as scheduled on December 19, 2008, but
testimony will be limited to the issue of whether Cintron was
given Miranda warnings at the time of his arrest.

With respect to the remaining issues raised in Cintron's
motion to suppress, there are no disputed facts that require an
evidentiary hearing.  The government has submitted two affidavits
detailing the circumstances of Cintron's arrest but Cintron has
submitted no affidavit in response and the relevant facts related
to his arrest are unrefuted.  Cintron's affidavit, submitted
contemporaneously with his motion to suppress, establishes only
that he did not consent to being stopped, arrested or searched.
Because consent is neither in dispute nor necessary to validate a

search, Cintron has not shown a factual dispute requiring an evidentiary hearing.  See Staula, 80 F.3d at 603.


## ORDER

In accordance with the foregoing, Cintron's motion to suppress (Docket No. 15) is, with the exception of statements made to Troopers Gaudet and Browning after his arrest, **DENIED**. The Court reserves its ruling on the remaining statements until after the evidentiary hearing.


**So ordered.**

                          /s/ Nathaniel M. Gorton
                          Nathaniel M. Gorton
                          United States District Judge
Dated December 15, 2008