United States District Court
District of Massachusetts

```
_____
                              )
UNITED STATES OF AMERICA,     )
                              )
       v.                     )
                              )   Criminal No.
MOISES CINTRON,               )   07-10435-NMG
                              )
       Defendant.             )
_____)
```

MEMORANDUM & ORDER

GORTON, J.

In this criminal case the defendant, Moises Cintron ("Cintron"), is charged with one count of being a felon in possession of a firearm and ammunition. He has moved to suppress, inter alia, statements made to members of law enforcement following his arrest on the ground that they were not made pursuant to a knowing, voluntary and intelligent waiver of Miranda rights. This Court convened an evidentiary hearing on January 30, 2009, to address the limited issue of whether Cintron's voluntary intoxication had any material effect on the validity of his Miranda waiver.

I.  Background

   A.  Findings of Fact

Cintron was arrested on the morning of November 7, 2007, during the course of a vehicle stop on Route 128 in Lynnfield, Massachusetts, after police observed a gun protruding from his

-1-

pocket. The facts surrounding that vehicle stop are recounted in detail in this Court's December 15, 2008, Memorandum and Order ("the December 15 M&O"), in which the Court denied most aspects of Cintron's motion to suppress.

Following his arrest, Cintron was placed in the back of a police cruiser by Massachusetts State Police Trooper Stevie Browning ("Browning"). Browning subsequently informed Cintron of his Miranda rights and transported him to the police barracks in Danvers, Massachusetts. Upon arrival, Browning took Cintron to the "booking" area and re-advised him of his Miranda rights. At that time Cintron indicated that he understood those rights.

Cintron proceeded to tell Trooper Browning (untruthfully) that his name was Elizear Caceras ("Caceras"). He also provided Browning with what turned out to be the correct date of birth and social security number of that individual. At that time Cintron also stated that he had purchased the firearm found in his possession for $200. During his interview with Trooper Browning, Cintron was relaxed and cooperative. Although he appeared tired and lethargic, he was not confused and was responsive to Browning's questions.

Cintron was subsequently questioned by Officer Scott Frost, a member of the Danvers Police Department. At that time Officer Frost was a Drug Recognition Expert who specialized in recognizing the physical characteristics of a person under the

influence of either drugs or alcohol.  During questioning by Frost, Cintron admitted to snorting a line of heroin earlier that morning and Frost observed a number of characteristics that he considered consistent with heroin use.  During the interview Cintron repeatedly fell asleep between questions and fell back against the wall or to the side.  Cintron also had difficulty keeping his eyes open and his speech was slurred.  According to Frost, Cintron physically appeared "out of it."

Despite exhibiting signs of heroin use, Cintron was cooperative and responsive throughout most of his interview with Frost.  Toward the end, however, when Frost sought to administer physical tests, Cintron refused to cooperate and indicated that he just wanted to sleep.

Later that afternoon Cintron was interviewed by Special Agent Michael Turner ("Turner") of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("the ATF").  Turner began the interview by again informing Cintron of his <u>Miranda</u> rights and obtaining a signed waiver.  The signature line on the waiver form begins with the letter M followed by the name Elizear Caceras.

Upon questioning by Turner, Cintron admitted his real name and also stated that he purchased the firearm for $250 from a man in Brockton.  Cintron also asked Turner "What can you do for me?" in an apparent effort to negotiate a deal.  Turner observed that Cintron appeared tired and nodded off at times during the

interview but that he responded appropriately to the questions asked and did not need to have questions repeated.

Evidence of Cintron's criminal history was also introduced at the evidentiary hearing. That evidence reflects that, since 1990, Cintron has been arraigned on 64 charges as an adult and 19 as a juvenile.

### B.  Procedural History

Cintron was indicted on December 19, 2007 and filed the pending motion to suppress on July 17, 2008. This Court denied most of that motion on December 15, 2008, but concluded that an evidentiary hearing was necessary to determine the validity of Cintron's Miranda waiver. That evidentiary hearing was held on January 30, 2009, and supplemental briefing was subsequently submitted by both parties.

## II. Analysis

### A.  Legal Standard

This Court begins "with the presumption that the defendant did not waive his [Miranda] rights" and "the government bears the burden of proving a valid waiver by a preponderance of the evidence." United States v. Downs-Moses, 329 F.3d 253, 267 (1st Cir. 2003). To be valid, a defendant's waiver of Miranda rights must be made voluntarily, knowingly and intelligently. Miranda v. Arizona, 384 U.S. 436, 444 (1966). According to the First Circuit Court of Appeals:

> Determining the validity of a Miranda waiver usually entails two separate inquiries. The waiver must be both voluntary, and knowing and intelligent.

United States v. Baezanson-Perkins, 390 F.3d 34, 39 (1st Cir. 2004) (citing Moran v. Burbine, 475 U.S. 412, 421 (1986)).

A waiver is voluntary if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." Id. (quoting Moran, 475 U.S. at 421). Because there is no suggestion that "police resorted to physical or psychological pressure" here, the voluntariness of Cintron's statements is not an issue. See Moran, 475 U.S. at 421.

To be knowing and intelligent a waiver "must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." Baezanson-Perkins, 390 F.3d at 39 (quoting Moran, 475 U.S. at 421). Courts must look to the totality of the circumstances to determine whether a defendant had the "requisite level of comprehension" to waive his Miranda rights. Moran, 475 U.S. at 421. Such circumstances include "the tactics used by the police, the details of the interrogation, and any characteristics of the accused that might cause his will easily to be overborne." United States v. Palmer, 203 F.3d 55, 60 (1st Cir. 2000).

### B.    Application

In light of the totality of the circumstances, this Court concludes that Cintron's intoxication was not so severe as to invalidate his waiver of Miranda rights.  This Court has considered, on the one hand, the fact that Cintron was impaired by his use of heroin and, thus, in a condition where his will might have been more easily overborne.  See Palmer, 203 F.3d at 60.  His inability to stay awake, slurred speech and lack of balance and coordination cause concern.  Nevertheless, those facts do not alone demonstrate that Cintron's waiver was made without full awareness of the consequences.  See id. at 61-62 (waiver valid despite the fact that defendant was suffering from heroin withdrawal and under the influence of an anti-depressant).  Moreover, other circumstances surrounding Cintron's interrogation reveal that he did possess the "requisite level of comprehension" to waive his Miranda rights.  See Moran, 475 U.S. at 421.

First, despite being under the influence of drugs, Cintron had the presence of mind to provide officers with a false name along with an accurate date of birth and social security number for the alias he had assumed.  The ability to recite accurately the name, date of birth and social security number of an assumed identity demonstrates a high degree of mental acuity and an awareness of what was going

on.

Second, Cintron's response to questions during his interrogations indicate that at no time was his will overborne. During his interview with Officer Frost, Cintron decided at which point he no longer wanted to cooperate and at that time asked to be left alone so he could sleep. Cintron also attempted to negotiate a deal with Agent Turner, strongly suggesting that he understood his right to answer, or not answer, questions as he saw fit. See United States v. Depina, No. 06-cv-10337, 2007 WL 2572436, at *3 (D. Mass. Sept. 7, 2007) (noting that refusal to answer certain questions suggests that suspect's will was not overborne).

Finally, the government has produced evidence of Cintron's lengthy criminal history, which includes arraignments for well over 50 offenses in the past 20 years. As a "veteran of the criminal justice system" Cintron was likely well aware of his Miranda rights and the consequences of his decision to waive them. See id.

The Court also rejects the defendant's assertion that the testimony elicited at the evidentiary hearing failed to establish that Trooper Browning read Cintron his Miranda rights simply because the witness did not specifically recite what those rights were. The thrust of Browning's

testimony was that Cintron understood his <u>Miranda</u> rights and that testimony was not refuted by the defendant or any other evidence before the Court.  This Court concludes that Cintron validly waived his <u>Miranda</u> rights and therefore his motion to suppress will be denied.

**ORDER**

In accordance with the foregoing, the defendant's motion to suppress (Docket No. 15) is **DENIED.**

**So ordered.**

                                             /s/ Nathaniel M. Gorton  
                                            Nathaniel M. Gorton  
                                            United States District Judge

Dated April 1, 2009