```
                    United States District Court
                      District of Massachusetts
```

_____
                                    )
**UNITED STATES OF AMERICA,**       )
                                    )
       v.                          )
                                    )   Criminal No.
**MOISES CINTRON,**                 )   07-10435-NMG
                                    )
       Defendant.                  )
_____)

**MEMORANDUM & ORDER**

**GORTON, J.**

Defendant Moises Cintron ("Cintron") is charged with one count of being a felon in possession of a firearm and ammunition. In two rulings in December, 2008 ("the December M&O") and April, 2009 ("the April M&O"), the latter following a limited evidentiary hearing, this Court denied Cintron's motion to suppress evidence and statements made. Before the Court are defendant's motion to reconsider that decision and a new motion to suppress evidence derived from an alleged <u>Terry</u> frisk.

**I.   Background**

    **A.   Factual Background**

Cintron was arrested on the morning of November 7, 2007 during a vehicle stop on Route 128 in Lynnfield, Massachusetts. The facts surrounding that arrest are recounted in detail in the December M&O and the April M&O but are briefly summarized here.

After observing a blue Nissan Maxima driving erratically,

Trooper Richard Gaudet ("Gaudet") activated his lights and the Nissan came to a stop in the left travel lane of Route 128. Trooper Stevie Browning ("Browning") and Sergeant Deyermond ("Deyermond") arrived on the scene momentarily. The stopped vehicle contained three occupants: a female driver, a young girl in the front passenger seat and Cintron, who was lying across the back seat and appeared to be asleep or unconscious.

The events immediately following the stop are in some dispute (thereby engendering the instant motions) but the gist is as follows. While Browning was occupied with the driver, Gaudet and Deyermond checked on Cintron. Deyermond aroused him and ordered him out of the car. As Cintron was being removed from the vehicle, Gaudet apparently saw the handle of what appeared to be a gun. According to protocol, he called out "gun" and the attention of all three officers turned to Cintron. He was subdued, arrested and a gun was recovered from his coat pocket. Where exactly the gun was located and when it was seized, however, is not entirely clear.

After his arrest, Cintron was placed in Browning's police cruiser. Browning subsequently informed Cintron of his Miranda rights and transported him to the police barracks in Danvers, Massachusetts. Upon arrival, Browning took Cintron to the booking area, re-advised him of his Miranda rights and Cintron indicated that he understood. Cintron was, however,

under the influence of heroin.

Cintron was subsequently interviewed several times, once by Browning, once by Officer Scott Frost, a member of the Danvers Police Department and a Drug Recognition Expert, and once by Special Agent Michael Turner of the Bureau of Alcohol, Tobacco, Firearms and Explosives. During the interviews, Cintron admitted that he had purchased the firearm but he did not consistently report the details of that purchase.

### B. Procedural History

Cintron was indicted on December 19, 2007 and filed a motion to suppress on July 17, 2008. This Court denied most of that motion in the December M&O but concluded that an evidentiary hearing was necessary to determine the validity of Cintron's <u>Miranda</u> waiver. An evidentiary hearing was held on January 30, 2009 and supplemental briefing was subsequently submitted by both parties. The Court denied the remainder of Cintron's motion in the April M&O, finding that his voluntary intoxication did not have any material effect on the validity of his <u>Miranda</u> waiver.

The case was scheduled for trial during the summer of 2009 and was proceeding accordingly. During that time, the government sent three letters to defendant's counsel pursuant to Local Rule 116.2(B)(2), which requires disclosure of exculpatory evidence not later than 21 days prior to trial. In late July, 2009, however, trial was delayed when defendant's counsel, Attorney

Robert Galibois, filed a motion to withdraw.  This Court allowed that motion after a hearing on July 31, 2009, and Attorney Page Kelley was appointed to represent defendant a few days later.

The trial date was subsequently postponed several times and, in late February, 2010, the defendant filed 1) a motion for reconsideration of this Court's previous denial of his motion to suppress and 2) a new motion to suppress.  Cintron also seeks another evidentiary hearing and has submitted a new affidavit in support of his motion.  The government opposed both motions the following month.  Oral argument on the pending motions was heard on Thursday, April 15, 2010.

## II.  **Analysis**

Both of defendant's motions arise from his contention that the three letters he received from the government during the summer of 2009 (at which point his previous motion to suppress had been denied in full) illuminate factual disputes and changes in the government's story significant enough to revisit the suppression issue.  In particular, Cintron argues that the facts revealed in the letters differ from police reports and affidavits that were before the Court when it denied his motion in the first instance.  That proposition forms the basis for his motion for reconsideration.

In support of his new motion to suppress, defendant elaborates further and advances a new theory.  Specifically, his

February, 2010 affidavit contends that his gun was not in plain view because it was buttoned inside his jacket pocket and was not discovered until he was completely out of the car and pat-frisked. Because the officers had no reasonable suspicion that he was armed and dangerous to justify such a pat-frisk, Cintron maintains, the search was unlawful and the evidence derived therefrom must be suppressed. Cintron's motion does not explain why he waited until now to make this argument.

The government responds that 1) defendant's request is untimely and 2) no factual allegations have changed apart from Cintron's own self-serving affidavit and some immaterial confusion about which pocket held the gun. With respect to the first point, the government contends that, 1) because the deadline for motions has long passed, the defendant must demonstrate "good cause" and 2) he cannot do so because there is no new information apart from Cintron's new revelation which he should have asserted previously. The government also finds it suspicious that, under Cintron's prior unsuccessful theory, he claimed he was too intoxicated to have knowingly waived his <u>Miranda</u> rights but now, having lost that argument, he recalls important details about the stop.

With respect to the three letters, the government argues that the officers' allegations have not materially changed and a difference of opinion over the gun's location is insignificant.

More importantly, the government contends that Gaudet has maintained all along that he saw the gun while Cintron was still in the car and that fact alone is sufficient to sustain this Court's prior ruling that the gun was properly seized because it was in plain view.

Defendant's motions will be denied and another evidentiary hearing is deemed unnecessary.  As an initial matter, at oral argument, counsel for the defendant explained his sudden reversal of theories for suppression, and his reason for filing a supporting affidavit for the first time in February, 2010, by blaming prior counsel for advancing a poor legal theory against the defendant's wishes.  The fact that Cintron has been appointed new counsel, however, does not give him a fresh start toward suppression.  Nor, for that matter, does it explain why Cintron did not contest Trooper Gaudet's version of events until 16 months after Gaudet's affidavit to which the defendant had the right to respond.

In any event, the Court has carefully reviewed all of the pleadings in this case and concludes that nothing material has changed in the government's account that warrants yet another review of the issue.  In sending the three informational letters to defense counsel, the Assistant United States Attorney was properly exercising caution but the information therein does not alter the "plain view" conclusion upon which the Court previously

denied Cintron's motion to suppress.  Specifically, the government's contention has always been and remains that one or more officers saw the gun in plain view before it was seized.  The officers had an uncontested right to remove Cintron from the vehicle and when (and in which pocket) the gun was discovered do not bear on whether it was in plain view.  The only evidence that contravenes the Court's previous ruling is, therefore, Cintron's affidavit, the timing and circumstances of which is so suspect that the Court declines to give it credit over the officers' consistent account.

Accordingly, both Cintron's motion for reconsideration and his untimely motion to suppress will be denied.

### ORDER

In accordance with the foregoing,

1) defendant's motion for reconsideration (Docket No. 62) is **DENIED;** and

2) defendant's motion to suppress (Docket No. 63) is **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated April 26, 2010